UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 1:14-CR-122 |
| Plaintiff, | |
| vs. | |
| Eric Lusenhop, | |
| Defendant. | |

## ORDER

Defendant, Eric Lusenhop, filed three pre-trial motions to suppress evidence in this case. The motions are: (1) a motion to suppress an out-of-court identification of Defendant based on a photographic array (Doc. 16); (2) a motion to suppress evidence seized pursuant to a search warrant issued to Cincinnati Bell for records concerning Defendant's cell phone (Doc. 17); and (3) a motion to exclude certain video and photographic evidence obtained from a video recording system used by the gas station where the crime took place (Doc. 18). The United States filed written responses to each motion (Docs. 19, 20, and 21).

At a recent hearing, the parties agreed that the motion regarding the cell phone (Doc. 17) would be submitted on the motion papers, and did not require an evidentiary hearing. The Court granted Defendant's request to file a reply memorandum, which has been filed (Doc. 26). This motion is therefore ripe for decision.

### Relevant Facts

Defendant seeks suppression of evidence obtained from Cincinnati Bell about Defendant's cell phone account and usage. He argues that the warrant used to obtain

evidence from Cincinnati Bell fails to establish probable cause for the search.

Detective Corey Hall, with the Forest Park police department, signed the warrant affidavit on November 10, 2014. (Doc. 17, Ex. A) Detective Hall averred that on October 30, 2014, an individual named Norman Williams was in line at a gas station in Forest Park waiting to make a purchase. An unknown, unidentified "light skinned subject" entered the store, but exited again before Williams did. When Williams left the store, this unknown individual approached him, pointed at gun at him and told Williams to "Give it up." A struggle ensued, and the unknown individual fired a single round at Williams. The bullet went through Williams' pants but fortunately did not hit Williams' body. Williams fled, and the unknown individual took Williams' wallet and his classic car, which was apparently parked at the gas station.

In the days following the robbery, Detective Hall released video images from the gas station's surveillance system to local news media. This publicity resulted in the receipt of "five different anonymous tips which named Eric Todd Lusenhop as the suspect." Det. Hall avers that he compared known images of Lusenhop with the surveillance images, and he noted "the consistency of the unknown suspect and Lusenhop." Hall further avers that his investigation revealed that Lusenhop was using a particular phone number. He then stated: "It is your Affiant's experience that these types of robberies are often time preplanned with other subjects and often through text messaging. Your Affiant has been a police officer for 13 years." (Id. at ¶ 6) Hall's affidavit then stated that he expected the records maintained by Cincinnati Bell regarding the stated telephone number would yield: "Communication between the suspect(s), and/or other individuals discussing the execution of the aggravated robbery,

-2-

or a motive for the aggravated robbery," as well as "text messages and/or phone calls involving the suspect(s) that will assist officers in determining the identity of the suspect(s) and any other information pertaining to the aggravated robbery." The search warrant was issued the same day by a judge of the Hamilton County Court of Common Pleas, and sought production of cell phone and subscriber information, records, cell site locations, text messages, photos, and any deleted information for the phone number, from October 24, 2014 to the date of the warrant. "Subscriber information" includes any devices, including SIM cards, that were inserted in or removed from the phone during the same time period.

Analysis

To satisfy the Fourth Amendment's probable cause requirement, a judge issuing a search warrant "must have a substantial basis for determining the existence of probable cause" after considering the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 239 (1983). In determining whether the warrant affidavit satisfies the probable cause standard, this Court is limited to reviewing the four corners of the affidavit, but should give great deference to the judicial officer's determination.

Here, based solely on Hall's affidavit, the state court had before it the facts that, ten days prior to the affidavit, an unknown assailant fired a gun at his victim, and stole his car and his wallet. The unknown assailant had been identified as Lusenhop by five separate anonymous tips, which were received by the police after surveillance footage of the crime scene was released to the media. Det. Hall averred that Lusenhop's cell phone records might reveal communications about the crime, a belief he based in part upon his 13 years of experience as a police officer and experience with this type of

robbery (e.g., sudden approach with a gun in hand to a victim driving a "classic car" which was stopped at a gas station). In considering whether or not an affidavit satisfies the Fourth Amendment, the entirety of the statements in the affidavit, including the officer's reliance on his training and experience, should be considered by the Court. The Government cites United States v. Caicedo, 85 F.3d 1184 (6th Cir. 1996), finding that an affidavit satisfied the probable cause standard. The Sixth Circuit held: "The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, *based on the nature of the evidence and the type of offense*." Id. at 1192 (internal citations and quotations omitted; emphasis added).

Defendant argues that the affidavit at issue in Caicedo was more detailed than Det. Hall's affidavit in this case. For instance, the officer specifically stated that he had seven years experience as a narcotics officer, and he listed items that a drug trafficker typically keeps in his residence. The officer also stated that the defendant had been arrested after his companion was found with a large quantity of cocaine in his backpack, and that the defendant had lied about his address after he was arrested. The defendant argued that the officer was uncertain about the basis for seeking the warrant to search defendant's residence. He noted that the officer averred that defendant's attempt to conceal his address "could be" an attempt to conceal evidence, that other evidence of drug trafficking "may be" found at his home, and that such evidence "could be" used against the defendant. The Sixth Circuit rejected these arguments, finding that under the totality of the circumstances, it was reasonable to defer to the officer's expertise in

-4-

investigating narcotics trafficking.

Here, the affidavit established that the unknown, armed assailant was still at large. Several tips, as well as Det. Hall's comparison of surveillance images with Lusenhop's picture, led the officer to suspect that Lusenhop was the assailant. While the affidavit did not describe in great detail the type of information that Det. Hall believed would be contained in the cell phone records, he identified communications with others to plan the robbery, text messages that might have been sent prior to the robbery, and records of phone calls that would assist the officers in determining the identity of the suspect(s). Det. Hall could have more specifically described the types of information likely to be located in a person's cell phone records. But the Court concludes that, given the totality of the circumstances at the time, the absence of a more particularized list is not fatal to a finding of probable cause, particularly because the unknown armed assailant was still at large.

Defendant also argues that the affidavit fails to establish a sufficient nexus between the place to be searched and the evidence sought. He cites United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006), and United States v. Laughton, 409 F.3d 744 (6th Cir. 2005), both involving search warrants for a residence. In both cases, the Sixth Circuit held that the facts in the affidavit failed to sufficiently connect the searched premises to the suspected crime. In McPhearson, police officers arrested defendant on a warrant for simple assault. The officers found crack cocaine in defendant's pocket, and a search warrant was then obtained for his home. The officer's affidavit stated the facts of the arrest and that 6.4 grams of crack cocaine was found in defendant's pocket. The district court granted defendant's motion to suppress evidence of the drugs and

firearms found in his home pursuant to the warrant.  The Sixth Circuit affirmed that decision, concluding that the affidavit lacked any facts establishing a nexus between the home and the probability that evidence of a crime will be found there.  The court of appeals noted that it is not enough to state that "the owner of property is suspected of a crime." Id. at 524 (internal citations omitted).  There were no additional facts contained in the affidavit supporting the Government's contention that it was likely that evidence of trafficking would be found in the home.  Defendant was not a known trafficker, his prior convictions were for property crimes, and he was being arrested on a charge of simple assault.

In United States v. Laughton, police obtained a search warrant for a residence after observing two controlled drug purchases from the defendant by a confidential informant.  The warrant affidavit stated that defendant kept drugs in his pants and pants pockets, and that there were "stashes around the home."  The informant told police that additional drugs were "located at or in the residence or located on the person" of the defendant.  The affidavit did not state that the home to be searched was the defendant's residence, and did not contain any facts establishing a connection between the defendant and the address listed on the warrant.  The Sixth Circuit noted that the affidavit was so deficient that the government conceded the lack of probable cause.

Lusenhop argues that Det. Hall's affidavit suffers from similar infirmities.  Hall states that "these types of robberies are often time preplanned" but does not state any facts derived from his experience that supports this statement.  He suspects but does not know that text messaging or telephone calls may have been involved.   He does not say that a cell phone was used during the robbery, or suggest that there was more than

one suspect.

The Government responds that in this day and age, it is "common knowledge" that cell phones are in widespread, nearly universal use. Most people with a cell phone communicate both verbally and by text messaging. Many cell phones have cameras; and location data for a cell phone at a particular time can be retrieved from providers. When he signed the warrant affidavit, Det. Hall knew that five separate anonymous tips identified Lusenhop as the suspect. The Government therefore argues that it was reasonable for Det. Hall to believe, under all of these circumstances, that Lusenhop used his cell phone in connection with the robbery, or that Lusenhop had his cell phone with him on October 30, 2014. The Court agrees with this argument.

In United States v. Gibbs, 547 Fed. Appx. 174 (4th Cir. 2013), the Fourth Circuit rejected a defendant's arguments that a search warrant authorizing the GPS monitoring of his cell phone by the DEA violated the Fourth Amendment. During an ongoing investigation into a major drug trafficking ring, federal agents initiated several court-authorized wiretaps of individuals believed to be involved in the ring, and intercepted phones calls to and from various targets. One of those calls was from an unidentified male, who agreed during a call to one of the suspects to bring $5,000 to the home of a major target. A search warrant was obtained for GPS monitoring on that unidentified individual's cell phone, which turned out to belong to the defendant, Gibbs. He was subsequently arrested, and he challenged the warrant. The Fourth Circuit concluded that the affidavit sufficiently described the evidence about the drug trafficking ring and Gibbs' suspected role in delivering $5,000 to one of the major targets. The affidavit also stated that GPS monitoring of the unknown cell phone would likely yield information

about the nature and extent of the trafficking operation. The Fourth Circuit in particular noted that the DEA agents "were not seeking to go on a fishing expedition, because the search warrant itself contained a thirty-day time limitation, the place searched was a cell phone, and the item to be seized was the location information emitted from that cell phone." Id. at 179.

The same observations apply in this case. Det. Hall believed that the cell phone records would likely yield information about Lusenhop's contacts in the days prior to the robbery, and/or information that would help in confirming the identification of the assailant. And the warrant did not amount to a "fishing expedition," because it was limited to cell phone records from the period October 24 to November 10. The Court concludes, based on the totality of the circumstances existing when Det. Hall sought the search warrant, that probable cause existed to support the warrant.

But even if the affidavit lacked probable cause, the court finds that the good faith exception saves the warrant from Lusenhop's challenge. That exception to the exclusionary rule applies where "the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate ...". United States v. Watson, 498 F.3d 429, 431 (6th Cir. 2007)(internal quotations omitted). The Court should inquire whether a reasonable police officer would know that the search was illegal despite the issuance of a warrant by a judicial officer. United States v. Leon, 468 U.S. 897, 923 (1984). In making this determination, four issues should be considered: (1) did the affidavit include false information or known false statements; (2) did the issuing judge simply act as a rubber stamp for police; (3) is the affidavit so utterly lacking probable cause that a belief in the validity of the warrant is objectively

unreasonable; and (4) is the warrant so facially deficient or "bare bones" that it cannot be presumed to be valid. United States v. Laughton, 409 F.3d at 748.

None of these four factors support a finding that the cell phone evidence should be suppressed. Lusenhop does not argue that the affidavit included a false statement. There is no evidence that the common pleas judge who signed the warrant was acting as a rubber stamp for the police and abandoned the court's neutral role. Lusenhop argues that Det. Hall's affidavit, like the one before the Court in Laughton, is so "bare bones" and lacking facts that the good faith exception does not apply. The Court disagrees. In Laughton, 409 F.3d at 749-750, the Sixth Circuit held that the good faith exception did not apply because the affidavit lacked **any** modicum of evidence connecting the criminal activity (drugs located in defendant's pants) with the residence to be searched. The court distinguished several of its prior cases finding that the exception applied to otherwise deficient warrants because, in each case, there was "some connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." Id. at 750.

Here, Det. Hall identified a connection between Lusenhop, the cell phone number, and the information that would be contained in the cell phone's records. While that connection may not be as direct as in cases where ongoing investigations have uncovered many facts supporting a search of a particular house or vehicle, the entire situation facing the police on November 10 cannot be divorced from a determination of whether the good faith exception should apply. An armed assailant had not been apprehended, and his identity had not been established. Det. Hall included the information he knew about the crime, the connection between the crime and Lusenhop,

and information he reasonably believed could be found in Lusenhop's cell phone records. That information, combined with the time-limited scope of the warrant and the nature of the "place to be searched" (cell phone records), is sufficient for this Court to find that Det. Hall reasonably relied on the issuance of the warrant by a neutral magistrate. The good faith exception applies, even if probable cause for the warrant might be lacking.

## Conclusion

For all of the foregoing reasons, Defendant's motion to suppress evidence seized from the cell phone records (Doc. 17) is denied.

SO ORDERED.

DATED: March 24, 2015                    s/Sandra S. Beckwith
                                         Sandra S. Beckwith, Senior Judge
                                         United States District Court